## Commonwealth v. Crum

*Wayne Punchon, Assistant District Attorney,* for Commonwealth.

*Andrew Natale*, for defendant.

DOWLING, *J.*, November 12, 1975—Can an operator be found guilty of driving under the influence when he is operating his vehicle in a field? Donald Crum was apprehended on June 5, 1975, while driving his motorcycle in a muddy area on Island Park in proximity to a macadamized road. He displayed the usual symptoms, failed a breathalyzer test,[1] and presented no evidence but requested a directed verdict[2] on the legal argument that the prohibition applies only to operation on a public highway or in an area where the public's safety would be endangered.

The section of The Vehicle Code under which he is charged states:[3] "It shall be unlawful for any person to operate a motor vehicle...while under the influence of intoxicating liquor. ..." Nothing is said about public highways, private roads, or any other restrictive area. That this is not inadvertent or that it is impliedly understood that the code applies only to roads or highways is negated by the fact that other prohibitive sections refer specifically to acts committed on the highways. For example, as regards driving after suspension, the code makes it unlawful for any person to "operate any motor vehicle... upon the highways of this Commonwealth after the operating privilege is suspended. . . ."[4]

Defendant's main thrust is that the primary purpose of The Vehicle Code is to protect the public's safety and every provision of the code must be interpreted in the light of that intent, citing Com-

---

1. .172 percent of alcohol.
2. Nonjury trial.
3. Act of April 29, 1959, P.L. 58, sec. 1037, 75 P.S. 1037.
4. Act of April 29, 1959, P.L. 58, sec. 624, 75 P.S. 624.

monwealth v. Oakley, 36 D. & C. 326 (1939). That decision was decided under The Vehicle Code of 1929 and turned largely on the fact that the title of that act specifically stated it was "An Act for the protection of the public's safety." Despite the fact that the Act of 1929 is silent in this respect, it is a reasonable construction to assume that it too was enacted to protect the public's safety and its provisions, including the prohibition against driving under the influence, should be construed with that purpose in mind.

There is other authority for defendant's position. In Commonwealth v. Goldscheiter, 57 D. & C. 490 (1946), the Clearfield County court held, in construing a similarly worded drunken driving section, under the Act of 1929, that while the vehicle need not be operated on a public highway, a new trial should be granted because the court charged the jury that defendant did not need to be on any road at all. The court apparently felt that the violation required a situation when the public would be endangered and this should be a jury question.

We do not find the opinion persuasive. It is, of course, not controlling and furthermore can be distinguished. In the Goldscheiter case, supra, the jury had acquitted defendant of operating after suspension, thus indicating their unwillingness to accept the testimony of the police that defendant admitted she drove the car from a highway onto the lawn. They apparently accepted her contention that another person had been operating the car and had gotten out prior to the police arriving. In the instant case, defendant admitted to the officer that he went from his home to the island. Since he was found operating a motorcycle and not a motorboat, the trier of facts can infer that he reached the island

by operating on one or more public roads or highways.

Defendant argues that there was no evidence of pedestrian traffic in the muddy and rough terrain in this particular field, that the public's safety was not endangered, and that it could not reasonably be anticipated that the public would be endangered by defendant sporting about with a motorcycle in this "bayou" country.

The danger to be averted by the act is propelling two tons of steel (? tin) while one is not in full possession of his faculties. A drunken person behind a wheel is a potential killer anywhere. Who can say that some innocent member of the public might not be strolling through Island Park at 4 a.m., perhaps to see the first glimmerings of a June dawn breaking over the Susquehanna. Could not an ornithologist be on hand to attempt a glimpse of the rare "prothonotary warbler" (sited at least once on the Potomac)?

Protecting the people of the Commonwealth from a drunken driver is protecting the public's safety regardless of the place where the protection is being afforded.

As the late Justice Musmanno, while a Common Pleas Judge, expressed it, "there's no place in this Commonwealth, and there should be none, where any of the people may be denied the protection of its laws regarding safety to life and limb. Public safety obliterates all private boundaries and transcends all private interests.": Commonwealth v. Campbell, 28 D. & C. 260, 266 (1936).

Accordingly, defendant's motion for a directed verdict is denied and he is adjudged guilty. The district attorney is directed to present him for sentencing.